IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCUS AARON, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 2:23-cv-60-RAH |
| | )           [WO] |
| BOW PLUMBING GROUP, INC., | ) |
| | ) |
|    Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The Plaintiffs—72 individuals who own or owned 47 residential homes in the Montgomery, Alabama area—originally filed this action in Alabama state court, seeking compensatory and punitive damages to recover costs resulting from allegedly defective cross-linked polyethylene (PEX) plumbing tubing installed in their homes. The Plaintiffs bring claims of breach of express and implied warranties, product liability, negligence, wantonness, and suppression against the manufacturer of the PEX tubing, Defendant Bow Plumbing Group, Inc. (Bow).

On January 24, 2023, Bow removed the action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. In the Notice of Removal, Bow asserted that removal was timely under 28 U.S.C. § 1446(b)(3) because Bow only "first . . . ascertained" that the amount in controversy exceeds $75,000 upon the

filing of Plaintiffs Jason and Beverly Goodson's Motion to Sever on December 27, 2022, in which the Goodsons stated that they and their attorneys learned that the cost to repair the Goodsons' home "far exceeds $75,000." (Doc. 1 at 5 (citation omitted).) The Plaintiffs' Motion to Sever is now pending before this Court.

The Plaintiffs then filed a Motion to Remand in this Court, (Doc. 15), arguing that removal was not timely because it was apparent in October 2022 that the amount in controversy requirement was met, and therefore, under § 1446(b)(1), the deadline to remove expired well before the Notice of Removal was filed. The Plaintiffs argue in the alternative that if Bow's removal was timely, the Court should sever and remand the non-Goodson Plaintiffs' claims.

For the reasons explained below, Bow's removal of this action was timely, but the non-Goodson Plaintiffs' claims are due to be severed and remanded. Therefore, the Plaintiffs' Motion to Remand is due to be granted in part and denied in part.

## II. BACKGROUND

The Plaintiffs are 72 homeowners who own or owned 47 homes in the Montgomery, Alabama area. Bow's PEX tubing was installed in all of the Plaintiffs' homes. According to the Plaintiffs, the PEX tubing has suffered cracks, holes, and leaks, thereby damaging the Plaintiffs' homes and their contents. The Plaintiffs seek damages for costs including: the cost of replacing or repairing the PEX tubing, the

cost of replacing or repairing the portions of their homes and their contents that were damaged by water leaks in the PEX tubing, the cost of alternative living arrangements pending completion of home repairs, the diminished value of their homes, and increased insurance costs.

In their Complaint, First Amended Complaint, and Second Amended Complaint in state court, the Plaintiffs stated that they pled damages "not to exceed $74,000.00 in the aggregate for each client." (Doc. 1 at 4 (citations omitted).) In October 2022, following discovery, the Goodsons realized that their home's damage exceeds $75,000. According to the Plaintiffs, their counsel notified Bow's counsel on some unspecified date in October 2022 about the Goodsons' damages and proposed an agreement to allow the Goodsons to dismiss their state action without prejudice and re-file it without a damage limitation. The record contains no evidence of the date on which this communication took place or in what form. Bow does not dispute that Plaintiffs' counsel informed Bow's counsel "in late October or early November 2022" that the Goodsons' damages may exceed $75,000, but Bow contends the communication was verbal. (Doc. 17 at 4.) In their reply brief, the Plaintiffs do not dispute that the communication was verbal.

After Plaintiffs' counsel sent several emails to Bow's counsel as a follow up in November 2022, Bow's counsel notified Plaintiffs' counsel that they did not agree to the dismissal proposal. None of the emails mention damages, (*see* Doc. 15-1),

although one email from Plaintiffs' counsel to Bow's counsel references "the Goodson matter," (*id.* at 4).

On December 27, 2022 in the state court action, the Plaintiffs filed a Motion to Sever the claims of Jason and Beverly Goodson on the grounds that they and their attorneys learned that the cost to repair the Goodsons' home "far exceeds $75,000." (Doc. 1 at 5 (citation omitted).) Bow removed the case to this Court before the state court ruled on that Motion, and therefore it remains pending.

### III.  LEGAL STANDARD

A defendant may remove an action initially filed in state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As relevant here, federal jurisdiction exists if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).

The removal statute contemplates two ways in which a defendant may remove a case based on diversity jurisdiction. First, when the jurisdictional grounds are apparent on the face of the initial pleading, the defendant may remove by filing a notice of removal with the district court within 30 days of receiving a copy of the initial pleading. *See* 28 U.S.C. § 1446(a)–(b). Second, where the jurisdictional

4

grounds become apparent through the defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," the defendant may remove by filing a notice of removal within 30 days of receiving the amended pleading, motion, order, or other paper. *Id.* § 1446(b)(3).

## IV.  DISCUSSION

The first issue the Court must resolve is whether Bow removed this case within the time prescribed by the removal statute. The parties agree that it was not facially apparent from the Complaint, First Amended Complaint, or Second Amended Complaint that the amount in controversy exceeds $75,000. The parties dispute, however, whether Bow first ascertained that the amount in controversy exceeds $75,000 on December 27, 2022, when the Goodsons' Motion to Sever was filed, or on an earlier date.

The Plaintiffs argue that Bow's removal was untimely because Bow knew that the amount in controversy exceeds $75,000 at least two months before the Motion to Sever was filed based on counsels' oral and email communications. In support, the Plaintiffs cite *Holloway v. Morrow*, No. 07-0839-WS-M, 2008 WL 401305, at *3 (S.D. Ala. Feb. 11, 2008), for the proposition that "the 30-day removal period prescribed by § 1446(b) commences running as soon as a defendant is able to ascertain intelligently that the action is removable." (Doc. 15 at 8.) The Plaintiffs

5

further contend that the 30-day removal period begins running as soon as a defendant has actual knowledge that the action is removable. Bow contends that neither counsels' oral communication nor the emails qualify as an "other paper" triggering the removal clock under § 1446(b)(3). As explained below, the Court agrees with Bow.

The plain language of § 1446(b)(3) contemplates the triggering of the removal clock based on the defendant's receipt of "an amended pleading, motion, order or other paper." The October 2022 oral communication is insufficient to trigger the removal clock because "the plain language of the statute does not leave room to 'wiggle' oral communications into its meaning." *Smith v. Bally's Holiday*, 843 F. Supp. 1451, 1455 (N.D. Ga. 1994). Put another way, § 1446(b)(3)'s plain language does not permit the Court to "transform off-the-record oral communications into 'other paper'" because it would require the Court to "dispense with the statutory requirement of 'paper.'" *Williams v. Litton Loan Servicing, LP*, No. 2:10-cv-951-WKW, 2011 WL 521624, at *5 (M.D. Ala. Feb. 15, 2011). Accordingly, the Court rejects the Plaintiffs' contention that the 30-day removal period began to run when their counsel orally informed Bow's counsel about the Goodsons' damages.[1]

---

[1] *Holloway* does not help the Plaintiffs. The *Holloway* court concluded that the defendant could not rely on § 1446(b)(3)'s "other paper" provision to establish a timely removal because the jurisdictional grounds were apparent from the face of the complaint. *Holloway*, 2008 WL 401305, at *3–4. This case is distinguishable because here the parties agree that the jurisdictional grounds were not apparent from the face of any of the Plaintiffs' complaints. Moreover, when *Holloway* is read in context, it does not stand for the proposition the Plaintiffs suggest—i.e., that the 30-day

Although an "email estimating damages" may qualify as an "other paper" under § 1446(b)(3), *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007), the emails cited by the Plaintiffs are insufficient. To trigger the removal clock under § 1446(b)(3), the document received by the defendant must "unambiguously establish federal jurisdiction." *Id.* at 1213. The emails here do not estimate or even mention damages. And the Court is not persuaded that one email's reference to the "Goodson matter" is sufficient to "unambiguously establish federal jurisdiction." *See id.*; *cf. Lee v. Lilly Trucking of Va., Inc.*, No. 2:12-cv-74-MEF, 2012 WL 960989, at *2 (M.D. Ala. Mar. 21, 2012) (based on the record and arguments made, concluding that an email from plaintiffs' counsel stating that he "thinks" his client would accept $250,000 was sufficient to unambiguously establish the amount in controversy and therefore qualified as an "other paper"). Consequently, the referenced emails did not make it "ascertain[able]" that the amount in controversy exceeds $75,000, and thus the removal period did not begin to run on the date of any of the emails.

Bow has carried its burden of demonstrating that it "first . . . ascertained" that the action was removable when it received the Goodsons' Motion to Sever on December 27, 2022. *See* 28 U.S.C. § 1446(b)(3). Bow filed its Notice of Removal

---

removal period begins running as soon as a defendant has actual knowledge that the action is removal. To the extent that it does, such a proposition is inconsistent with § 1446(b)(3)'s plain language.

on January 24, 2023, less than 30 days later. Consequently, Bow's removal was timely.

The Court now turns to the Plaintiffs' alternative argument that the Court should sever and remand the non-Goodson Plaintiffs' claims. The Plaintiffs contend that the Court lacks supplemental jurisdiction over the non-Goodson Plaintiffs' claims, or alternatively that the Court should decline to exercise jurisdiction over them.

The non-Goodson Plaintiffs bring state law tort claims and seek $74,000 or less in damages. Thus, neither federal question nor diversity jurisdiction exists over these claims. Consequently, federal jurisdiction exists only if the claims meet the criteria for supplemental jurisdiction in 28 U.S.C. § 1367. A federal court with original subject matter jurisdiction over a claim also has "supplemental jurisdiction" over state law claims that are "so related to claims . . . within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). "The state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then . . . there is power in federal courts to hear the whole." *Id.*

8

The non-Goodson Plaintiffs' claims arguably share a "common nucleus of operative fact" with the Goodson Plaintiffs' claims because they all concern the allegedly defective design, manufacture, and installation of Bow's PEX tubing into residential homes. *See id.* But it is far less certain whether all of the Plaintiffs' claims would be expected to be tried in a single proceeding. *See id.* The non-Goodson Plaintiffs' claims concern those plaintiffs' specific and unique experiences with PEX tubing and the resulting damages that befell each of those plaintiffs' individual homes, which are separate and distinct from the Goodsons' claims premised upon the Goodsons' own experience with PEX tubing and the resulting damage to the Goodsons' home. For example, the dates of purchase and installation, the installer, the dates of damage, the extent of and type of damage, and mitigation efforts will be different for each of the Plaintiffs. These facts suggest that the exercise of supplemental jurisdiction may not be appropriate.

Supplemental jurisdiction "is a doctrine of discretion, not of . . . right." *Id.* at 726. Thus, even if the requirements of § 1367(a) are satisfied, this Court may nonetheless decline to exercise supplemental jurisdiction over the non-Goodson Plaintiffs' claims if:

> (1) the claim[s] raise[] a novel or complex issue of State law, (2) the claim[s] substantially predominate[] over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

9

28 U.S.C. § 1367(c).  Whether to exercise supplemental jurisdiction is a decision within the district court's discretion.  *See Gibbs*, 383 U.S. at 726; *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).  In deciding whether to exercise supplemental jurisdiction, this Court must weigh the factors outlined by the United States Supreme Court in *Gibbs*: "judicial economy, convenience, fairness, and comity."  *See Ameritox, Ltd. v. Millennium Lab'ys*, 803 F.3d 518, 537 (11th Cir. 2015) (citation omitted).

Substantial predominance exists "when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Parker*, 468 F.3d at 744 (citation omitted).  For example, state law claims may predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."  *Gibbs*, 383 U.S. at 726.  Although predominance "generally goes to the type of claim, not the number of parties involved," "the disparity in numbers of . . . plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003); *accord Santiago v. Wm. G. Roe & Sons, Inc.*, No. 8:07-CV-1786-T-27MAP, 2008 WL 2944921, at *2 (M.D. Fla. July 29, 2008).

Here, the disparity in numbers of plaintiffs is so great that it becomes dispositive. Two plaintiffs—a husband and wife—bring claims concerning their own Alabama residence and over which the Court may exercise original jurisdiction under § 1332(a)(1). By contrast, 70 unrelated plaintiffs bring state law claims concerning separate residences. Moreover, the proof required for each plaintiff will vary because it will depend on the unique circumstances regarding each specific home. Thus, on this record, the Court concludes that the disparate numbers of plaintiffs would "cause the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog," *see De Asencio*, 342 F.3d at 311, and also that the differences in proof militate in favor of declining supplemental jurisdiction over the non-Goodson Plaintiffs' claims. *See Santiago*, 2008 WL 2944921, at *1–2 (declining to exercise supplemental jurisdiction over state law claims on predominance grounds where 82 plaintiffs had state law claims and only two plaintiffs had a federal claim).

In addition, the *Gibbs* factors—judicial economy, convenience, fairness, and comity—weigh in favor of declining supplemental jurisdiction over the non-Goodson Plaintiffs' claims. Remanding those claims would greatly serve comity by allowing an Alabama state court, which already is handling similar claims brought by dozens of other homeowners, to decide Alabama state law claims brought by Alabama plaintiffs concerning Alabama properties. Remand would also promote

fairness in that it would allow the non-Goodson Plaintiffs to retain their chosen litigation forum. Considerations of convenience and judicial economy slightly favor exercising jurisdiction, in that it would be more convenient and economical for the parties and witnesses to try all of the Plaintiffs' claims in a single proceeding. But any inconvenience is relatively small given that that the state court action would proceed in Montgomery County, Alabama, where the federal action is also pending. *See Bridges v. Poe*, No. 7:19-cv-00529-LSC, 2020 WL 374668, at *4 (N.D. Ala. Jan. 23, 2020) (making a similar observation where the state court action was pending in an Alabama county located approximately one hour by car from the federal court's chambers). Moreover, considerations of judicial economy do not outweigh the considerations of comity and fairness, which together strongly weigh in favor of declining supplemental jurisdiction. Accordingly, the Court in its discretion declines to exercise supplemental jurisdiction over the non-Goodson Plaintiffs' claims.

Finally, a Motion to Intervene that was originally filed in state court is pending before this Court, in which 19 individuals seek to intervene as additional plaintiffs. (Doc. 1-2 at 457–58.) The Court cannot discern from the Motion whether the Court could exercise original jurisdiction over the proposed intervenors' claims. And in light of the Court's decision to sever and remand the non-Goodson Plaintiffs' claims,

the Court finds it appropriate to withhold ruling on the Motion to Intervene and instead allow the state court to rule on it on remand.

## V.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1. The Plaintiffs' Motion to Remand (Doc. 15) is GRANTED IN PART, to the extent that the non-Goodson Plaintiffs' claims are severed and remanded to the Circuit Court of Montgomery County, Alabama.  The Motion to Remand is DENIED in all other respects;

2. The Goodson Plaintiffs' Motion to Sever is DENIED as moot;

3. The Court withholds ruling on the Motion to Intervene in favor of the state court on remand;

4. This case is REMANDED IN PART, to the extent that the non-Goodson Plaintiffs' claims are remanded to the Circuit Court of Montgomery County, Alabama;

5. The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the partial remand to the Circuit Court of Montgomery County, Alabama.

**DONE** on this the 18th day of April, 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE